<div style="margin-left:auto">MULFORD<br>v.<br>WIMBISH.</div>

evident sense of article 2218, which pre-supposes other provisions concerning the prescription against the action of nullity and of recision of agreements than that which it establishes. Article 3507 contains other important provisions, which we do not deem it material to the question under consideration to examine.

The conclusion to which we have come, as to the prescription in cases of fraud, is in harmony with the most obvious reasons of justice and sound policy. To enable a party who is in fraud to prescribe against the injured party for the time in which he may be enabled to keep him in the dark as to his rights, is to give a license to deception, and enable the wrong doer to triumph by the continuance of his evil deeds.

On the merits, we think the case is with the plaintiff.

<div style="text-align:right">*Judgment affirmed.*</div>

---

## SLATTERY *v.* THE POLICE JURY OF CONCORDIA.

Where in an action on a contract made with the commissioners of a particular district or subdivision of the parish, acting under an ordinance of the police jury, for the erection of certain levées, the evidence shows that the contractor did not contemplate that the parish should be responsible in the first instance for the cost of the levées; and the failure to obtain payment from the source originally contemplated, is attributable to the negligence of the creditor, the latter cannot recover.

APPEAL from the District Court of Concordia, *Curry*, J. *Frost*, and *H. A. Bullard*, for the appellant. *Poindexter, Stacy* and *Sparrow*, for the defendants. The judgment of the court was pronounced by

ROST, J. The petition alleges that *James Riley, James Behan*, and the petitioner contracted with the commissioners of the Rifle Point levée district, who acted under an ordinance of the police jury of the parish of Concordia, for the construction of certain portions of the Rifle Point levée, and that said contract was let out, after public advertisements, as required by the ordinance ; that these parties faithfully executed their portion of the contract, and that their work was accepted by the commissioners, in the year 1837 ; that the said contractors subsequently transferred their claims to *James R. Kane*, which transfer was accepted by the commissioners, and that said *Kane* has since re-transferred those claims to the petitioner, who is now the owner and holder of the same. The petition concludes with a prayer that the police jury be cited and adjudged to pay the petitioner the amount of the claim and interest.

The defendants deny all the allegations contained in the petition. They aver that the commissioners have paid to the contractors employed by them all the moneys to which they were entitled, and plead those payments in compensation against any amount the plaintiff may show himself entitled to recover from them. They specially deny the liability of the parish, and plead the prescriptions of one year and of three years, and prescription generally. The court of the first instance gave judgment in favor of the defendants, and the plaintiff appealed.

We do not think that the plea of compensation, as made by the defendants, admits their indebtedness. That plea does not contradict the general denial in this case. The defendants admit the liability of the Rifle Point district, and allege payments made by the commissioners. If they should be liable them-

selves, those payments must necessarily be deducted from the amount of the claim.

For the proper understanding of this case, it is necessary to premise that, the general laws of the State in relation to roads and levées are not enforced in the parish of Concordia. The section of the act of 1829, concerning roads and levées, declares that the provisions thereof shall not apply to that parish, except such as may be adopted by the police jury, and " that the said police jury shall have plenary and unlimited power to make such enactments in regard to roads and levées as they may deem necessary and proper, &c., including the power to authorise the assessment and collection of taxes which they may deem necessary, on the private land claims *within any levée district established by them;* to cause the expenses of levéeing any public land included in such district, or other necessary work or expenses authorised by any ordinance, &c."

The grant of these unusual powers appears to have been rendered necessary by the peculiar topography of the parish, and the vast quantity of levées to be made across bayous, and over lands belonging at the time to the public domain. The police jury, in the exercise of them, have divided the parish into levée districts, and passed ordinances for the distinct assessment, in each district, of the taxes necessary to make and keep in repair the levées thereof.

Those districts were, until the year 1842, represented by three commissioners appointed in each by the police jury, with power to sue and be sued, and to execute the ordinances concerning roads and levées. When the assessments made by them for the erection of levées became final, they were to deliver them to the sheriff of the parish, who was directed to collect them, and to pay the proceeds into the hands of the parish judge. If the amounts assessed were not paid on demand, it was made the duty of the sheriff to deliver the claims against the delinquents to the judge, who was directed to enter judgments upon them, and to cause those judgments to be satisfied out of the property of the said delinquents, by preference over all other claims. The ordinance under which the levée in this case was adjudicated had exclusive reference to the Rifle Point district, and provided for the assessment and collection on the inhabitants thereof of a tax sufficient to pay for the work. The contract sued upon was entered into with the commissioners of the district, and the bonds for its performance were given to them. One of them has testified that he never supposed the parish to be bound, and that soon after the work had been commenced, he apprised the contractors of the manner in which they were to be paid. They appear to have made no objection to this, and, when the work was completed and they had received a part of the sum due them in the manner contemplated by the commissioners, they transferred the remainder of their claim to *James R. Kane,* by an instrument which is in these words :

"Natchez, 16th March, 1838.

" To *Messrs Charles Crosgrove, Walter Byrnes* and *Tobias Gibson,* Commissioners of the Rifle Point levée district, of the parish of Concordia :

" Gentlemen :

" Please pay to *Mr. James R. Kane* the amount that may be due us as contractors, for such works as was completed by us upon said levée, upon a settlement of accounts.          Respectfully your ob't serv'ts,

" JAMES BEAHAN.
*his*
" JAMES ⋈ RILEY.
*mark,*

" Witness, JAMES D. COYLE.          " JAMES SLATTERLY."

SLATTERY        This transfer was accepted by the commissioners in the following words:
v.           " Accepted, payable to *Mr. James R. Kane*, from the funds due by the Rifle
POLICE JURY.
Point levée district, for labor done by the within drawers, when collected."

The commissioners delivered to *Kane*, at his request, all the papers establishing the sums remaining due by the inhabitants of Rifle Point district, and after retaining them six years in his possession, without taking any steps against the delinquents, he assigned the transfer he held to the plaintiff, without warranty, and in consideration of the sum of $70. That claim, while in his hands, was payable from the funds due by the Rifle Point levée district, and it is not easily perceived how it could give the plaintiff a claim against the parish.

This transfer and acceptance, taken in connection with the ordinance under which the contract was entered into, the testimony of *Crosgrove*, and the usual and authorised mode of paying for the erection of levées in the parish of Concordia, satisfy us that it was not in the contemplation of the parties, at the time, that the parish should be responsible in the first instance, and that, if any responsibility on their part has since accrued, it must have resulted either from the want of means in the Rifle Point district to pay the consideration of the contract, or from the omissions and negligence of the police jury in the collection of those means. The evidence sustains neither hypothesis.

It was the duty of *Kane*, after he received the transfer, to throw no obstacle in the way of the collection of the claims in the manner provided by the ordinance. Instead of this he undertook to collect them himself, and appears to have collected a part of them. It has been alleged in argument that he could not collect more, because the debtors refuse to pay on account of informalities in the advertising of the levées by the commissioners. The evidence does not establish that fact, and *Kane* himself contradicts it. He did not collect more because he did not follow the proper course; he did not cause the delinquents to be sued, and their property to be seized and sold. It is proved that the lands assessed were much more than sufficient to pay the tax, and the mode of collection provided by the ordinance was certain. If that security has been lost, the loss is to be attributed exclusively to the negligence of *Kane*, for which the police jury cannot be held responsible.                    *Judgment affirmed,*